UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

NATHAN WILLIAMS                          CIVIL ACTION NO. 10-cv-0294

VERSUS                                   JUDGE HICKS

WARDEN, LOUISIANA STATE                  MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

Nathan Williams ("Petitioner") was convicted after a bench trial of armed robbery while armed with a firearm. He was adjudicated a fifth-felony offender and received a life sentence. He filed a direct appeal and received some relief when the appellate court remanded for resentencing based on a determination that he should have been categorized as a third-felony offender. State v. Williams, 930 So.2d 203 (La. App. 2d Cir. 2006), writ denied, 948 So.2d 121 (La. 2007). He also filed a post-conviction application, and he now presents a petition for federal habeas corpus relief. For the reasons that follow, it is recommended the petition be denied.

**Relevant Facts**

Around 8:00 p.m. one evening in August 2003, the night manager at the Popeye's fried chicken restaurant at East 70th and Line Avenue in Shreveport was told by one of her two cashiers that a customer said the store was about to be robbed. The manager spoke to the customer, but he denied making the statement. A few seconds later, a tall man whose face and head were covered with two blue or black bandanas, so only his eyes and some hair

were visible, entered the restaurant with a gun and said, "Y'all bitches know what time it is." He forced the manager to open a safe, ordered a cashier to open the cash registers, and removed cash from them. He ordered the employees into a cooler, where one of the cashiers had already hidden, and left with the money in a bag. The manager came out of the cooler about five minutes later and used an alarm button to signal the police.

Shreveport police officer Erik Ardoin was only a couple of blocks away when he received the robbery call. He knew that past robberies of the restaurant had involved the use of a nearby alley as an escape route. He drove toward the alley and saw a blue Oldsmobile parked in it with two black males running from the car. One of the men had a wad of cash in each hand. Ardoin got a good look at the men, who were well lit by street lights as well as his patrol car's takedown lights and spotlight. When Ardoin got out of his car and ordered the men to show their hands, the man holding the money threw it at Ardoin. Both men ran, with Ardoin chasing, and they soon split up. Ardoin followed the suspect who had thrown the money and was able to catch and arrest the man, Eric Jefferson.

Jefferson was taken to the police station and questioned. He named his cousin, Petitioner, as his accomplice. Within an hour after the confrontation in the alley, Officer Ardoin was shown a mugshot photograph of Petitioner, whom he identified as the second suspect. He said there was "no doubt in my mind" Petitioner was the man he saw with Eric Jefferson.

Crime scene investigators found over a thousand dollars in cash scattered down the alley, and they found a revolver near the Oldsmobile. No fingerprints found on the objects

or at the crime scene were linked to Petitioner.  The Oldsmobile, which was left in the alley with the headlights on, in drive, but the engine not running, was registered to Petitioner's mother.  Officers obtained an arrest warrant for Petitioner and took him into custody after he attempted to flee when officers looked for him at the home of his girlfriend, who was an employee at the Popeye's restaurant.

The defense called one witness, Eric Jefferson, who had been convicted of the armed robbery after an earlier trial.  Jefferson testified that he had been at Petitioner's home earlier that evening. He borrowed the Oldsmobile from his aunt to go home and get some marijuana, but the car ran out of gas in the alley.  He said there was no other person with him when he encountered Officer Ardoin, and he claimed the Shreveport police planted the money in the alley.   Trial judge Michael Pitman heard closing arguments and then gave a detailed recitation of the facts and his reasons for finding beyond a reasonable doubt that Petitioner was guilty of armed robbery while armed with a firearm.  Tr. 370-77.

**Sufficiency of the Evidence**

Petitioner argues that the evidence was not sufficient to support his conviction.  The State argues that Petitioner did not properly exhaust his state court remedies with respect to this issue.  The claim may be denied on the merits even if it was not exhausted.  28 U.S.C. § 2254(b)(2), and that is the easier course here.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). It is the responsibility of the factfinder – not the federal habeas court – to decide what conclusions should be drawn from evidence admitted at trial. Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). A state-court decision rejecting a sufficiency challenge is thus reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

Officer Ardoin testified at a number of pretrial hearings and two trials.  Defense counsel did a good job of pointing out any inconsistencies in his testimony at the various appearances, and Petitioner depends largely on those points in making this argument.  For example, Officer Ardoin said at trial that his heart was not beating fast when he saw the men, but he said in another hearing that his heart was beating pretty fast.  He once testified that he believed the two men had on white shirts, but he said later that he could not remember; the store manager said that she believed the robber who entered the store had orange in his shirt. Officer Ardoin once said he was in the room while Eric Jefferson was questioned, but

another time he said he was in the hall.  Ardoin clarified, however, that he stood in the hallway outside a small office and was able to hear the entire interview.

The points raised by Petitioner were argued by defense counsel in closing arguments, but the factfinder determined that they were not sufficient to prevent the State from proving its case beyond a reasonable doubt that Petitioner assisted the captured Eric Jefferson in committing the robbery.  The state appellate court reviewed an argument on direct appeal that the evidence was insufficient.  It applied the Jackson standard, reviewed the relevant evidence, and determined that a rational trier of fact could have found the State proved beyond a reasonable doubt that Petitioner was guilty.  State v. Williams, 930 So.2d at 205-06.

The state appellate court's application of Jackson to Judge Pitman's carefully considered verdict cannot be characterized as so incorrect as to be an objectively unreasonable application of Jackson.  There will almost always be some faded memories or minor inconsistencies that come to light at trial, but the ones pointed to by Petitioner do not rise to the level that would permit habeas review, given the doubly deferential standard that applies.

**Suggestive Identification**

Petitioner's habeas petition, filed on a form provided by the court, lists as ground one a claim that he was denied due process when the state court did not suppress a suggestive and unreliable identification.  When asked for supporting facts, Petitioner referred to his attached memorandum, but the memorandum does not discuss this claim.  Simply listing a habeas claim and not briefing it is an abandonment or waiver of that claim. Lathers v. Cain, 2011

WL 1793274, *4 (M.D. La. 2011), report and recommendation adopted, 2011 WL 1752245 (M.D. La. 2011).

The claim also lacks merit.  The trial court held a hearing on Petitioner's motion to suppress Officer Ardoin's identification of Petitioner from the presentation of a single photograph.  Officer Ardoin gave testimony at the hearing similar to that presented at trial about his observation of the robbers and the presentation of the photograph.  Judge Jeanette Garrett, who presided over the hearing, noted evidence that Ardoin got a good look at the face of each robber and was absolutely certain Petitioner was the second robber when he was shown his photograph less than an hour later.  She denied the motion.  Tr. 154-56.

A conviction based on an eyewitness identification at trial following a pretrial identification will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification.  A two-step process governs the admissibility of identification evidence: First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification. Coleman v. Quarterman, 456 F.3d 537 (5th Cir. 2006).

The Supreme Court has identified several factors to help determine the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5)

the length of time between the crime and the confrontation. Coleman, supra, citing Neil v. Biggers, 93 S.Ct. 375 (1972). Unless the circumstances show "a very substantial likelihood of irreparable misidentification" then the identification is admissible, and its weight is for the jury or trial judge to decide. Manson v. Brathwaite, 97 S.Ct. 2243, 2254 (1977).

The state appellate court listed the Manson factors and reviewed the evidence from the suppression hearing and trial.  It found that the evidence negated any reasonable probability of misidentification when Ardoin identified Petitioner's photograph and later identified of him at trial.  State v. Williams, 930 So.2d at 206.  The facts showed that Ardoin had a good opportunity to view the suspect under strong lighting, there was little time between that viewing and the observation of the photograph, and Ardoin consistently demonstrated certainty about his identification.

Petitioner's attorneys did a good job of pointing to every weakness they could find and inconsistencies in related testimony, but they did not demonstrate a very substantial likelihood of irreparable misidentification.  The issue might be debatable among reasonable persons at the trial or even state appellate levels, but those decisions have been made and may now be reviewed only under the deferential habeas standard of 28 U.S.C. § 2254(d)(1). The state court's reasoned application of the law to the record was certainly not an objectively unreasonable application of Manson or other clearly established Supreme Court precedent as would be required to obtain relief on a claim of this kind.

**Ex Post Facto**

Petitioner's habeas petition lists as ground two that the state court violated the Ex Post Facto Clause of the Constitution when it sentenced him under a law not in effect at the time of the commission of the offense.  For supporting facts, he refers to his memorandum, but this issue is not discussed in the memorandum.  Again, Petitioner has abandoned or waived this claim by not properly briefing it.

To the extent the court can guess what issue Petitioner intended to present, it is moot.  Petitioner argued on direct appeal that changes in Louisiana statutes and jurisprudence regarding habitual offender adjudications meant that three of his five prior felony convictions should count as only one because the three guilty pleas were entered on the same day.  The appellate court agreed, amended the habitual offender adjudication to a third-felony offender, and remanded for a new sentence.  State v. Williams, 930 So.2d at 207.  This is presumably the issue upon which Petitioner raises the ex post facto claim, but it appears that Petitioner has already obtained the relief he requested.  This was also presented to the state courts as an issue of interpretation of state statutes and jurisprudence; their was no federal Ex Post Facto claim properly presented and exhausted in the state courts.

**Ineffective Assistance of Counsel**

Petitioner argues that his trial counsel, Roland McKneely, III, was ineffective because (1) he did not interview or call witnesses who would have supported a viable defense and (2) he opened the door to damaging hearsay testimony.  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell

below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general one, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system.  Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

Petitioner argued in his post-conviction application that counsel should have interviewed and called as witnesses Frieda Williams, Tamara Everett, Ruthie Mitchell, and Dequella Jackson.  Petitioner pointed to statements made by some of the witnesses that might support the defense, and he said that he had received information that Ms. Jackson (one of

the employees at the Popeye's) knew Petitioner was not the man who robbed them that night because she was acquainted with Petitioner and would have recognized him.

The State's response to the application included an affidavit from trial counsel, Mr. McKneely.  He testified that Petitioner never communicated to him that Ms. Jackson could exonerate him or help him in any way.  Counsel admitted that he never interviewed Ms. Jackson, who quit her job soon after the robbery, because he had no reason to believe she could help the case in any way.  Counsel explained that Freida Williams, Petitioner's mother, was not called at trial because she signed an affidavit that was inconsistent with what she told police.  Counsel explained the inconsistent statements to Petitioner, and it was Petitioner's decision to not call his mother as a witness.  Counsel testified that he attempted multiple times to contact Tamara Everett by telephone and letter, but she did not respond.  McKneely and co-counsel Neil Erwin, both told Petitioner that they did not believe Ms. Everett should be subpoenaed because she had made prior inconsistent statements and refused to cooperate with defense counsel.  Petitioner again made the call to not subpoena her.  Tr. 673-74.

Petitioner filed a response but did not include any supporting evidence.  Tr. 677-80.  Judge Garrett looked to the affidavit from counsel and found that Petitioner had not met his burden under Strickland of establishing ineffective assistance.  With regard to the lack of an interview of Ms. Jackson, Judge Garrett pointed to Strickland's statement that a particular decision not to investigate must be directly assessed for reasonableness, and she found that counsel did act reasonably under the circumstances.  Tr. 681-84.  Petitioner pressed his argument before the state appellate court, which noted that he "presents very little

documentary or evidentiary support of his claims, and offers nothing which calls into question the trial court's finding that no ineffectiveness of counsel was shown."  Tr. 744. The Supreme Court of Louisiana denied writs without comment.  Tr. 768.

The state court rejected this claim in a contest between bold but unsupported assertions by Petitioner and specific testimony from counsel.  It is no surprise that it chose Petitioner had not met his burden in that contest.  Petitioner continues to make his general and unsupported claims that these witnesses could have helped the defense.  "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). In addition, for Petitioner to demonstrate the requisite Strickland prejudice, "[he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Id.  Failure to interview an eyewitness such as Ms. Jackson can be deficient representation.  Anderson v. Johnson, 338 F.3d 382, 391 (5th Cir. 2003).  But even if there has been defective performance, habeas relief is not warranted unless the poor performance caused prejudice – a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 104 S.Ct. at 2068; Anderson, 338 F.3d at 393.  There were no affidavits or other evidence before the state court that any of these witnesses could and would have offered the helpful testimony Petitioner claims. The state court quite reasonably rejected the claim under those circumstances.  Based on the record, the state court's application of Strickland was not

one of the extreme malfunctions of the criminal justice system that might permit habeas relief.

Petitioner also argues that counsel was ineffective because he opened the door to damaging hearsay testimony from Officer Ardoin.  The following exchange took place during Officer Ardoin's direct examination:

> Q.    Were you present during any interview of Eric Jefferson?
>
> A.    Yes, sir, I was.
>
> Q.    As a result of that interview, did Detective Andrews show you anything?
>
> A.    He showed me a picture.
>
> Q.    And were you able to identify anybody in that picture?
>
> A.    I was able to identify the other suspect.
>
> Q.    Okay.  Do you see the person that you saw in the picture, here in court today?
>
> A.    Yes, sir.  Nathan Williams ... in the orange jumpsuit.

Tr. 214-15.

Defense counsel, on cross-examination, attempted to point out as many inconsistencies as possible between Ardoin's trial testimony and testimony he had given earlier in the Jefferson trial and in pretrial hearings.  For example, counsel had Ardoin reaffirm his testimony that he was present and listening during the interview of Jefferson, which counsel then tried to establish was inconsistent with Ardoin's testimony at a hearing where he testified that he was in the hallway.  Counsel read Ardoin's testimony from that

hearing, including his statement: "At that time I believe Mr. Jefferson gave up his counterpart, made a confession on Mr. Nathan Williams."  Counsel then read the testimony that followed that comment where Ardoin said he was in the hallway across from where they were speaking, and Detective Andrews then showed him a mug shot of Petitioner.  Tr. 229-30.

On redirect examination, Ardoin explained that the interview of Jefferson took place in an office with an open door.  Ardoin said he was in and out of the office, but was able to hear everything Jefferson was saying even when he was in the hallway.  The prosecutor then asked Ardoin what Jefferson said, and Ardoin recounted how Jefferson claimed that Petitioner picked him up, told him they were about to hit Popeye's chicken, and asked Jefferson to be a lookout for him.  Defense counsel objected that this was hearsay, but the court ruled that counsel had opened the door with regard to the confession.  Ardoin continued that Jefferson said Petitioner went inside and committed the robbery; the car would not start after he returned.  Tr. 236-38.

Petitioner argues that counsel harmed the defense by referencing a hearsay statement made by co-defendant Jefferson that implicated Petitioner.  Counsel testified in his affidavit filed in state court that the questioning was part of his strategy to prove the suggestive nature of Ardoin's identification and that Ardoin did not remember the facts as well as he thought he did.  Tr. 674.  The trial court addressed the claim that counsel was ineffective based on lack of interviews and calling of witnesses, but its written decision makes no reference to this particular Strickland claim.  Tr. 681-84.  The appellate court refers generally to "claims of

ineffective assistance of counsel" but does not specifically mention this one (or any other). Tr. 744.

When a state court issues an order that summarily rejects without discussion all claims raised by a defendant, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S.Ct. 1088 (2013); Harrington v. Richter, 131 S.Ct. 770 (2011).  The state appellate court's broad rejection of all of Petitioner's Strickland "claims" appears to be sufficient to warrant deference to the state court decision as required by Section 2254(d).

Counsel could perhaps have made his points about the inconsistencies without mentioning or opening the door to testimony that Jefferson implicated Petitioner during the interview.  But any rational person who heard the evidence, even if it were scrupulously devoid of any hearsay from Jefferson, would realize that Ardoin was shown Petitioner's mug shot because Jefferson had implicated him as the second robber.  There is, therefore, almost no likelihood the result of this bench trial would have been different had counsel not mentioned Williams' actual words.  Petitioner has not shown that he is entitled to relief on this claim under the doubly deferential standard of review this court must apply to the state court's decision.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2).  A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of July, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE